No. 23-15780

—————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

—————————————

RENO SPARKS INDIAN COLONY and SUMMIT LAKE PAIUTE TRIBE and
BURNS PAIUTE TRIBE,
*Plaintiffs/Appellants,*

v.

DEB HAALAND, ANNE-MARIE SHARKEY, and KATHLEEN REHBERG,
*Defendants/Appellees.*

—————————————

*On Appeal from the United States District Court for Nevada, Reno in Case No.
3:23-cv-00070-MMD-CLB, Chief District Judge Miranda M. Du*

—————————————

**APPELLANTS' REPLY BRIEF**

—————————————

William Falk
2980 Russet Sky Trail
Castle Rock, CO 80108
(319) 830-6086
falkwilt@gmail.com

Terry J. Lodge
316 N. Michigan St., Suite 520
Toledo, OH 43604-5427
(419) 205-7084
Tjlodge50@yahoo.com

*Attorneys for Reno-Sparks Indian
Colony and Summit Lake Paiute Tribe*

Rick Eichstaedt
EICHSTAEDT LAW OFFICE, PLLC
421 W. Riverside Avenue, Suite 1004
Spokane, Washington 99201-0410
(509) 251-1424
rick@rbmindianlaw.com

*Attorney for Burns Paiute Tribe*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION ............................................................1

ARGUMENT ....................................................................2

    I.    SLPT'S ASSERTIONS THAT BLM WITHHELD INFORMATION FROM, AND MADE MISREPRESENTATIONS TO, NV SHPO, ACHP, AND TRIBAL CONSULTATION PARTIES ARE MUCH MORE THAN "SPECULATIVE.".................................................2

    II.    THE INFORMATION BLM WITHHELD AND MISREPRESENTED IS, IN FACT, VERY RELEVANT.............8

    III.    THE MATERIALS THAT SLPT OFFERS THAT POST-DATE THE ROD ARE APPROPRIATE FOR CONSIDERATION. ........9

    IV.    MEANINGFUL CONSULTATION MUST INCLUDE MORE THAN JUST SENDING A FEW LETTERS. ............................ 10

    V.    SLPT DID NOT WAIVE ITS ARGUMENT THAT BLM FAILED TO MAKE A REASONABLE AND GOOD FAITH EFFORT TO IDENTIFY HISTORIC PROPERTIES IN THACKER PASS BEFORE ISSUING THE ROD...................... 13

    VI.    SLPT'S CLAIMS ARE NOT BARRED BY LACHES. .............. 16

    VII.    SLPT DID NOT WAIVE ITS ARGUMENT THAT BLM'S POST-REVIEW DISCOVERY PROCESS IS RIPE FOR REVIEW AS A FINAL AGENCY ACTION.............................. 20

    VIII.  BLM'S PRACTICE OF WITHHOLDING AND MISREPRESENTING INFORMATION CONTINUED INTO THE POST-REVIEW DISCOVERY PROCESS......................... 21

i

# TABLE OF AUTHORITIES

**Cases**                                                      **Page**

*Pueblo of Sandia v. United States*,
  50 F.3d 856, 862 (10th Cir. 1995) ...................................................... 4, 6, 14, 16

*Quechan Tribe of Fort Yuma Indian Reservation*,
  755 F.Supp.2d at 1112, 1118 ........................................................... 12

*San Carlos Apache Tribe v. United States*,
  417 F.3d 1091, 1097 ..................................................................... 17

*Save the Peaks Coalition v. U.S.*,
  669 F.3d 1025, 1031 ................................................................... 16, 17

*Standing Rock Sioux Tribe v. US Army Corps,*
  205 F. Supp. 3d 4, 32 (D.C. 2016).................................................... 12

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.,*
  100 F.3d 1443, 1450 (9th Cir. 1996) .................................................9

*Western Watersheds Proj. v. Dept. of the Interior*,
  677 F.3d 922, 925 (9th Cir. 2012) .................................................. 13

**Statutes**

5 U.S.C. § 551(13) ........................................................................ 21

5 U.S.C. § 701 et seq........................................................................ 20

5 U.S.C. § 706(1) ........................................................................ 20

5 U.S.C. § 706(2) ..................................................................... 20, 21

5 U.S.C. §§ 701-706 et seq .............................................................. 20

**Regulations**

36 C.F.R. § 800.2(c)(2)(B)(ii)...............................................................3

36 C.F.R. § 800.2(c)(2)(ii)(D) .............................................................. 10

36 C.F.R. § 800.2(c)(2)(B)(ii)(A) ....................................... 3, 4, 10, 11

36 C.F.R. § 800.4(b)(1) ........................................................ 16

36 C.F.R. § 800.4(c)(1) ........................................................ 24

36 C.F.R. § 800.13(b). .......................................................... 24

36 C.F.R. § 800.16(l)1. ..........................................................3

**Other Authorities**

BLM Handbook (H) 1780-1 ............................................... 12

Appellants Burns Paiute Tribe ("BPT"), Reno-Sparks Indian Colony ("RSIC"), and Summit Lake Paiute Tribe ("SLPT") (collectively the "Tribes") offer this optional reply to the Bureau of Land Management's ("BLM") and Lithium Nevada Corporation's ("LNC") answering briefs.

## INTRODUCTION

BLM's consultation efforts for LNC's Thacker Pass Lithium Mine and Exploration Projects ("the Project") were rife with withheld information, misrepresentations, and downright lies. BLM's actions tainted its tribal consultation and historic properties identification efforts, both before and after issuing the Project Record of Decision ("BLM"). These tainted efforts have produced a situation where LNC is proceeding with full-scale mine construction that is destroying a number of sites sacred to Paiute and Shoshone peoples, including the September 12, 1865 Thacker Pass massacre site, before BLM has adequately identified those sacred sites with the Tribes, documented the significance of those sacred sites, or committed to any measures to mitigate or avoid harm to those sacred sites.

Despite this, BLM and LNC insist that BLM's actions have been reasonable and taken in good faith. However, lying to mandatory consulting parties is never reasonable and withholding information is, by definition, bad faith. BLM suggests the Court should not consider the lies and withheld information because

1

consultation is ongoing. But, if agencies are left to define when consultation is ongoing and when consultation is finished, and the Administrative Procedure Act's provisions for challenging failures to act are ignored, then agencies will hold consultation open forever – even as construction destroys the very objects of consultation – so that agencies can never be sued. LNC argues that SLPT's claims are barred by laches. But laches is strongly disfavored in environmental cases, laches in this case would defeat Congress' environmental policy, and SLPT was diligent despite BLM's misdirections, withheld information, and non-responsiveness that made it very difficult for SLPT to know whether BLM would honor SLPT's consultation requests or not.

## ARGUMENT

### I. SLPT's assertions that BLM withheld information from, and made misrepresentations to, NV SHPO, ACHP, and tribal consultation parties are much more than "speculative."

BLM claims that SLPT's assertions – that BLM withheld information from, and made misrepresentations to, mandatory consulting parties – are "speculative." BLM Answering Brief, pg. 34. SLPT, however, cites statements made by the Nevada State Historic Preservation Officer ("NV SHPO"), the Advisory Council on Historic Preservation ("ACHP"), and the three tribes BLM claims it adequately consulted with, all of which indict BLM of withholding information and making misrepresentations.

BLM failed to make reasonable and good faith efforts to identify historic properties and Indian tribes to be consulted cooperatively with NV SHPO before issuing the ROD. "The term [historic property] includes properties of traditional religious and cultural importance to an Indian tribe…" 36 C.F.R. § 800.16(l)1). NHPA "requires the agency official to consult with any Indian tribe…that attaches religious and cultural significance to historic properties that may be affected by an undertaking. This requirement applies regardless of the location of the historic property." 36 C.F.R. § 800.2(c)(2)(B)(ii). And, "The agency official shall ensure that consultation in the section 106 process provides the Indian tribe…a reasonable opportunity…to advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance…" 36 C.F.R. § 800.2(c)(2)(B)(ii)(A). These regulations mean that BLM's obligation to make reasonable and good faith efforts to identify historic properties involves making reasonable and good faith efforts to consult with tribes that attach religious and cultural significance to historic properties that may be affected by an undertaking including SLPT. BLM failed to do that.

To counter BLM's assertions that its fast-tracked review of the Project provided the Tribes with meaningful consultation, SLPT offers letters from all three tribes BLM claims to have consulted, flatly contradicting BLM's assertions of adequate consultation with those tribes. (ER-91-99). SLPT also proffers a

declaration from SLPT Tribal Chairwoman Randi Lone Eagle which directly contradicts BLM's assertions. (ER-261-262).

The NHPA implementing regulations also obligate BLM, while identifying historic properties, to consult with the NV SHPO. Consultation with the NV SHPO similarly must be reasonable and in good faith. Even if the Court rules that the bare minimum of mailing a few letters during a global pandemic to small tribes is enough to provide a tribe with a reasonable opportunity to consult with BLM about all of the things described at 36 C.F.R. § 800.2(c)(2)(B)(ii)(A), SLPT is still likely to succeed on the merits of its claim. BLM's consultation with NV SHPO regarding identifying historic properties was not reasonable nor made in good faith.

*Pueblo of Sandia v. United States*, 50 F.3d 856 (10th Cir. 1995) is the leading case for determining what reasonable and good faith efforts for identifying historic properties. Neither BLM nor LNC contradicted this in their answers. *Pueblo of Sandia* holds that good faith efforts for identifying historic properties encompasses good faith consultation with the proper SHPO. In *Pueblo*, the Tenth Circuit ruled that the Forest Service did not make the requisite good faith efforts because the Forest Service withheld relevant information from the New Mexico SHPO.

Here, SLPT offered written statements made by Rebecca L. Palmer, the Nevada State Historic Preservation Officer, that BLM withheld information from NV SHPO during the Thacker Pass review process. Palmer wrote that "BLM has not provided us with a summary of the results of the [tribal] consultation as we requested. It is the results of the consultation that documents the federal agency's identification efforts. As the federal agency is required to determine the scope of the identification effort in consultation with the SHPO, and this scope includes consultation with Tribes, we should receive a summary of these efforts." (ER-122). Later, in correspondence with ACHP, Palmer noted: "From the information you provided today [that BLM gave ACHP when confronted by the ACHP about tribal consultation], the BLM has documentation related to the identification of properties with traditional religious and cultural significance that was not provided [to] my office despite our repeated requests for a summary." (ER-126). Palmer bluntly stated the problem with this: "We are not able to provide our assistance if the agency does not disclose information necessary for us to make an informed decision." *Id.*

BLM falsely and repeatedly informed the NV SHPO that it began consulting with three tribes, including SLPT, about the Project in 2017 (ER-106; 109; 111), even going so far as to state that BLM actually met with these three tribes to discuss the project (2-ER-111). ***None of this was true***. BLM did not begin

5

consulting with SLPT in 2017. And, BLM did not meet with SLPT about the Thacker Pass Project. After making these misrepresentations, in the very next sentence, BLM reported to NV SHPO that "no questions, comments, or issues have been raised and no sacred sites, places of cultural and religious importance, or traditional cultural properties have been identified within the project area by any tribe." (ER-111). While this statement may have been true, it is missing a crucial piece of information, *viz*., that BLM never actually met with SLPT (or Winnemucca Indian Colony) in 2017 – or ever – about the Thacker Pass Project.

Not only did BLM misrepresent the extent of tribal consultation to NV SHPO, BLM actively withheld summaries of tribal consultation that were directly requested by NV SHPO – summaries that would have revealed to NV SHPO that BLM had not actually met with SLPT or the other tribes and that no tribal consultation about the Project had began in 2017, or ever. Consultation, as demonstrated by federal caselaw and SHPO Palmer's pleas for information necessary to make an informed decision is meaningless unless consulting parties are actually consulted using available, relevant information. *See Pueblo of Sandia v. United States*, 50 F.3d 856 (10th Cir. 1995)

"Affording the SHPO an opportunity to offer input on potential historic properties would be meaningless unless the SHPO has access to available, relevant information." *Pueblo of Sandia*, 50 F.3d at 862. In the context of identifying

historic properties that may be of traditional religious and cultural importance to tribes, when BLM misrepresented that it began consultation about the Project with SLPT in 2017, met with SLPT to discuss historic properties, and no issues had been raised by any tribe, BLM was actively representing to NV SHPO that BLM had confirmed that there were no properties of traditional religious and cultural importance to tribes in Thacker Pass. When properties of traditional religious and cultural importance to tribes are present in a project area, more intensive tribal consultation obligations are triggered. So, BLM's misrepresentations tainted BLM's efforts to identify historic properties in Thacker Pass. BLM withheld relevant information during required consultation with NV SHPO. ***That consultation was, therefore, meaningless***. Because it was meaningless consultation, SLPT is likely to succeed on the merits of this claim.

SLPT also offers written statements made by ACHP about how BLM withheld information. In a letter to BLM, ACHP stated, "Despite this ongoing consultation, the SHPO has informed the ACHP that substantive information on tribal consultation is routinely withheld from them, which is problematic considering the SHPO's role in providing concurrence on the eligibility of historic properties which may be of significance to Indian tribes off tribal lands." (ER-166).

7

The Tribes also offer evidence of BLM's bad faith dealings with NV SHPO in the form of the SHPO's statements that during mandatory consultation with NV SHPO, BLM engaged in "report dumping" where BLM sent "a stack of paper at least two feet high to review in one 30-day period." (ER-126). The NV SHPO called this "a needless overload of the system" that "intentionally or otherwise, overwhelms our limited review capacity." (ER-126).

## II. The information BLM withheld and misrepresented is, in fact, very relevant.

BLM tries to excuse the misrepresentations it made, by arguing that BLM's statements about tribal consultation "were tangential to the main point of these letters" and "whether or not informal consultation started in 2017 is irrelevant…" BLM Answering Brief, p. 36. However, NV SHPO explained why these statements are neither tangential nor irrelevant: "the federal agency is required to determine the scope of the identification effort in consultation with the SHPO" and because "this scope includes consultation with Tribes, we should receive a summary of these efforts." (ER-122). As NV SHPO further explained, the office cannot provide assistance if the agency does not disclose information necessary for NV SHPO to make an informed decision about concurring with the scope of historic properties and tribal consulting parties identification efforts. (ER-126).

**III.    The materials that SLPT offers that post-date the ROD are appropriate for consideration.**

BLM argues that this Court should not consider the letters sent by the tribes BLM claimed it consulted with or NV SHPO's and ACHP's emails and letters that post-date the ROD. BLM quotes *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.,* 100 F.3d 1443, 1450 (9th Cir. 1996) for the proposition that "post-decision information…may not be advanced as a new rationalization either for sustaining or attacking an agency's decision." On the same page quoted by BLM, this Court articulated the well-established exceptions for allowing extra-record materials including "when plaintiffs make a showing of agency bad faith." *Id.*

SLPT has not offered the post-decisional letters and emails to advance a new rationale either for sustaining or attacking an agency's decision. SLPT argues that BLM's pre-ROD NHPA process was conducted in bad faith because BLM misrepresented crucial information to secure legally required concurrences from mandatory consulting parties and offers these post-decisional letters and emails to prove that BLM's statements were, in fact, false. If plaintiffs in administrative review cases like this one are barred from producing post-decision information that shows government agencies made false representations, then government agencies can simply lie, quickly issue decisions, and bar evidence of their lies from consideration by courts. Put more simply, if plaintiffs cannot offer post-decision

evidence that an agency lied, then government agencies simply have to issue decisions before anyone discovers their lies to get away with those lies.

## IV. Meaningful consultation must include more than just sending a few letters.

BLM failed to ensure that the Section 106 consultation provided SLPT "a reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's effects on such properties, and participate in the resolution of adverse effects," before issuing the ROD, as required by 36 C.F.R. § 800.2(c)(2)(B)(ii)(A). BLM failed to conduct consultation with SLPT in a manner sensitive to SLPT's concerns and needs, as required 36 C.F.R. § 800.2(c)(2)(ii)(D).

In response, BLM offers four letters it claims were sent to SLPT. The fourth letter, however, was sent on November 30, 2020. But, BLM had already concluded the NHPA review process on November 5, 2020 when it executed the Memorandum of Agreement to implement the Thacker Pass Historic Properties Treatment Plan with NV SHPO and LNC. BLM has consistently refused to entertain any discussion about revising the MOA despite being advised by the ACHP that BLM needs to make these revisions based on all of the new information about historic properties in Thacker Pass offered by the Tribes. (ER-147; 162; 165). Furthermore, BLM claims the first letter sent to SLPT about the

Thacker Pass project was on December 12, 2019, which means that the entire NHPA review process involving tribal input for the nation's largest lithium mine and the world's largest open pit lithium mine began and finished in just over ten and a half months. And, that ten and a half months coincided with the breakout of the COVID-19 pandemic, the worst pandemic the world has experienced in at least 100 years.

SLPT is a small tribe with a tribal government that is more the size of a neighborhood homeowners' association than it is to even the smallest BLM field office. In order for this Court to rule that BLM provided SLPT with a reasonable opportunity to do all required by 36 C.F.R. § 800.2(c)(2)(B)(ii)(A), this Court would have to find that BLM offered SLPT a reasonable opportunity, even in the midst of a worldwide pandemic, when all BLM did is send a few letters to this small tribal government about a massively complex project that will cause a multitude of environmental, social, and cultural harms. This Court would have to find that opportunity reasonable despite all three of the tribes that BLM identified as needing consultation (including SLPT) having explicitly told BLM that they had no reasonable opportunity to consult when the Tribes finally learned about the Project.

This Court would have to determine that BLM was reasonable when it ignored its own policy, which states: "The Department Tribal Consultation Policy

11

notes that sending a letter to a Tribe and receiving no response does not constitute a sufficient effort to initiate tribal consultation." (BLM Handbook (H) 1780-1, *Improving and Sustaining BLM-Tribal Relations*, Chapter 3.A.3.) This Court would have to determine that BLM's letters gave SLPT a reasonable opportunity despite courts repeatedly holding that these kinds of letters are mere contact and that "contact, of course, is not consultation." *Standing Rock Sioux Tribe v. US Army Corps,* 205 F. Supp. 3d 4, 32 (D.C. 2016) (quoting *Quechan Tribe of Fort Yuma Indian Reservation*, 755 F.Supp.2d at 1112, 1118). This Court would have to determine that BLM's conduct was reasonable despite BLM knowing SLPT's office was closed while ignoring authoritative advice from the ACHP regarding Section 106 compliance during the COVID-19 pandemic, which urged federal agencies to pause tribal consultation "while, due to the COVID-19 outbreak, an office is closed or work conditions are such that the…Tribes…are unable to carry out their Section 106 duties or statutory rights to consultation in a timely fashion…" (ER-63-65). This Court would have to factor in the reality that in 2019 and 2020 tribal governments had phones and email, that direct communication with tribal governments was as easy as making a phone call or sending an email, and that BLM attempted neither.

The lithium rush in Nevada and Oregon is on. With the factual context in this case, if this Court rules that sending a few letters, even during a global

12

pandemic when tribal offices are shut down, satisfies NHPA tribal consultation obligations, then that's all government agencies will do moving forward. Historically impoverished tribes – especially small, understaffed tribes like SLPT – will be forced to quickly examine and understand, under the pressure of short government deadlines with all of the other responsibilities that come with running a sovereign nation, the dozens of letters they receive monthly from government agencies reviewing projects that will destroy more of their ancestral homelands.

**V.    SLPT did not waive its argument that BLM failed to make a reasonable and good faith effort to identify historic properties in Thacker Pass before issuing the ROD.**

BLM argues that "the Court should not even reach whether SLPT is likely to prevail [on its argument that BLM failed to make a reasonable and good faith effort to identify historic properties in Thacker Pass] because the Tribe waived it." BLM Answering Brief, 38. But, this is not true.

"We do not require a party to file comprehensive trial briefs on every argument that might support a position on an issue. There is no waiver if the issue was raised, the party took a position, and the district court ruled on it." *Western Watersheds Proj. v. Dept. of the Interior*, 677 F.3d 922, 925 (9th Cir. 2012). Here, the District Court specifically acknowledged that "SLPT next claims that BLM's failure to consult it before issuing the ROD violated the NHPA, along with BLM's purported failure to make a good faith effort to identify Indian tribes to consult

13

with or identify historic properties in the Thacker Pass area" and cited to the Complaint at page 36 where, indeed, SLPT claimed "that BLM's failure to make a reasonable and good faith effort to identify historic properties in Thacker Pass violates NHPA and is unlawful."

In the Motions for Temporary Restraining Order and Preliminary Injunction, SLPT clearly stated that "BLM failed to make a reasonable and good faith effort to identify historic properties and Indian tribes to be consulted cooperatively with NV SHPO, before issuing the ROD." 2-ER-45. In the very next sentence, SLPT cited *Pueblo of Sandia v. U.S.* where the Tenth Circuit, while analyzing whether the Forest Service failed to make the requisite good faith effort to identify traditional cultural properties in consultation with the New Mexico SHPO, ruled that "[a]ffording the SHPO an opportunity to offer input on potential historic properties would be meaningless unless the SHPO has access to available, relevant information. Thus, 'consultation' with the SHPO mandates an informed consultation." 50 F.3d at 862.

To show how BLM failed to make a reasonable and good faith effort to identify historic properties while withholding and misrepresenting information in consultation with NV SHPO, in line with the court's reasoning in *Pueblo of Sandia*, SLPT offered a long list of BLM's consultation failures with NV SHPO. (ER-45-48). This list included that tribal consultation with SLPT began in 2017

14

and was ongoing in 2019 and 2020 (ER-45), that BLM ignored NV SHPO's requests for documentation of tribal consultation (ER-46), that the NV SHPO explained to the ACHP that "the BLM has documentation related to the identification of properties with traditional religious and cultural significance [in Thacker Pass] that was not provided [to] my office despite our repeated requests for a summary," (ER-46), and even that BLM misrepresented the extent of tribal consultation pertaining to the identification of historic properties in Thacker Pass to the District Court. (ER-47).

The Tribes also incorporated the Complaint into the Motions for Temporary Restraining Order and Preliminary Injunction. See ER-38 ("The factual and legal bases for these Motions is further set forth in detail in the Plaintiffs' Complaint…"). In the Complaint, SLPT stated it "challenges…BLM's failure to make a reasonable and good faith effort to identify historic properties in Thacker Pass…" Complaint, ¶ 5. SLPT also alleged that "BLM failed to identify the September 12, 1865 Thacker Pass Massacre Site that will be adversely affected by the Project before issuing the ROD despite possessing documentation of the 1865 massacre in its own General Land Office records." Complaint, ¶ 77. Then, again, SLPT alleged that "BLM's failure to make a reasonable and good faith effort to identify historic properties in Thacker Pass violates NHPA and is unlawful." Complaint, ¶ 152.

15

SLPT cited 36 C.F.R. § 800.4(b)(1), which directs "[t]he agency official shall make a reasonable and good faith effort to carry out appropriate [historic properties] identification efforts…" and in the next sentence pointed out that "In *Pueblo of Sandia v. U.S.*, the 10th Circuit interpreted what a 'reasonable effort' under the NHPA implementing regulations is and stated: 'a mere request for information is not necessarily sufficient to constitute the 'reasonable effort' section 106 requires." Complaint, ¶ 54. SLPT also cited the Tenth Circuit's statement in *Pueblo of Sandia* that "by withholding relevant information from the SHPO during the consultation process…the Forest Service further undermined any argument that it had engaged in a good faith effort." Complaint, ¶ 61.

## VI.   SLPT's claims are not barred by laches.

LNC fails to cite key holdings of the precedent it relies on to argue that SLPT's claims are barred by laches. In *Save the Peaks Coalition v. U.S.*, the Ninth Circuit did rule, "To establish laches, a party must demonstrate (1) that the opposing party lacked diligence in pursuing its claim; and (2) that prejudice resulted from that lack of diligence."669 F.3d 1025, 1031. But, in the very next two sentences, the Court also ruled that "[b]ecause environmental damage does not inflict harm only on the plaintiff, laches is strongly disfavored in environmental cases. The use of laches should be restricted to avoid defeat of Congress' environmental policy." *Id.* (internal citations omitted). The Ninth Circuit has called

NHPA a "close statutory analog" to the National Environmental Policy Act ("NEPA"). *San Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097 ("What § 106 of NHPA does for sites of historical import, NEPA does for our natural environment."). The District Court, writing its decision before the Tribes had finished their arguments, also ignored the full holding in *Save the Peaks Coalition.*

The Project will destroy a mountain pass sacred to Paiute and Shoshone peoples that is home to a whole Traditional Cultural District, including the sites of two massacres. This environmental damage does not inflict harm only on the Tribes. Destroying the setting of this history makes it more difficult for all Americans to study, understand, and remember the atrocities that happened in Thacker Pass. And, when we forget atrocities, we are more likely to repeat them.

SLPT did not lack diligence in pursuing its claim. "To determine whether a party lacked diligence in pursuing its claim, we consider (1) whether the party attempted to communicate its position to the agency before filing suit, (2) the nature of the agency response, and (3) the extent of actions, such as preparatory construction, that tend to motivate citizens to investigate legal bases for challenging an agency action." *Save the Peaks Coal.,* at 1031 (internal citations omitted). "Other relevant considerations include the length of the delay before the plaintiff filed suit and the circumstances surrounding that delay." *Id.*

17

BLM's point made in its answering brief – that surface disturbing activities approved by the ROD could not begin until the BLM Nevada State Office issued a decision accepting LNC's reclamation financial guarantee – is mostly true. BLM Answering Brief, p. 10. Apparently, the archaeological digs described in the Historic Properties Treatment Plan, that no tribe participated in drafting and that does not mention the site's significance to the Tribes, could begin before LNC's reclamation financial guarantee was accepted, as this surface disturbance began in the spring of 2022 over strenuous objections from the Tribes. So, BLM must mean that mine construction could not begin.

Regardless, it only took a matter of hours on February 22, 2023 for LNC to submit the surety bond application and BLM to approve it, clearing the way for full mine construction. The ROD was issued on January 15, 2021. LNC's claims of prejudice are undermined by the fact that it intentionally waited over two years before voluntarily seeking bond approval. LNC authored its own delays and cannot now claim more delays will prejudice it – especially when construction is currently proceeding.

SLPT did try to communicate its position to BLM before filing suit. On May 13, 2021, SLPT responded to BLM's April 14, 2021 letter, requested formal consultation on the HPTP, and specifically told BLM that "the Tribe strongly opposes the execution of any activities where cultural resources may be disturbed,

including those listed [in the HPTP]." (ER-93). SLPT also wrote on August 17, 2022 to reaffirm their May 13, 2021 letter and to request that no work harm historic properties in Thacker Pass until meaningful consultation could conclude. (ER-188). On September 17, 2022, BLM staff joined a SLPT Tribal Council meeting but specifically refused to answer questions about or discuss the Thacker Pass Project while SLPT's counsel was present – even though SLPT specifically designated counsel as its representative for Thacker Pass consultation. Complaint, ¶ 115. BLM had that whole time, from May 13, 2021 to February 22, 2023 to conduct the post-review discovery process. If BLM would have actually followed that process then most of SLPT's concerns about cultural resources would have been addressed and there would have been no need to sue.

ACHP noted that "[i]nstead of attempting to consult to resolve these issues on a case-by-case or programmatic basis, the BLM often simply fails to respond to many of the comments and request for information raised by the SHPO." (ER-168). SLPT found the same thing to be true for information raised by SLPT. The consultation games that BLM played on the Tribes are well-documented in the Complaint. ¶¶ 75-135. BLM routinely refused to answer direct questions and consistently mischaracterized the Tribes' position. This made it incredibly difficult for SLPT to know whether BLM was going to comply with the law or not. Even

19

now, BLM claims consultation is "ongoing" while LNC destroys the very sites that are the objects of consultation.

## VII. SLPT did not waive its argument that BLM's post-review discovery process is ripe for review as a final agency action.

BLM also argues that the Tribes waived their argument that they can challenge BLM's post-review discovery process under 5 U.S.C. § 706(1), allowing a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed," because they raised the issue for the first time in their reply brief. BLM Answering Brief, p. 44. That is simply not the case. The Tribes raised this issue in their Complaint. In the very first paragraph of the Complaint, the Tribes indicated: "This action is brought under…the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq…Plaintiffs, [RSIC, SLPT, and BPT] challenge [BLM's] actions and *failures to act* in approving physical harm to, and construction activities on, the Plaintiffs' National Register of Historic Places-eligible traditional cultural property in [LNC's] Thacker Pass Lithium Mine Project ("the Project") Area." Complaint ¶ 1, pg. 2 (emphasis added). The Tribes indicated again: "BPT's and RSIC's claims, here, are all rooted in BLM's post-ROD actions and failures to act…" Complaint ¶ 2, pgs. 2-3.

Again, in the "Jurisdiction" section of the Tribes' Complaint, they indicated, twice, that BLM's failure to comply with the requirements of the FLPMA, NHPA, and NEPA is subject to review under 5 U.S.C. §§701-706. Complaint ¶¶ 8, 9. And,

20

§701(2) explains that terms including "'agency action' have the meanings given them by section 551 of this title." Agency action is defined at § 551(13) to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." (emphasis added). In the Tribes' Motions for Temporary Restraining Order and Preliminary Injunction, the Tribes further stated, "The factual and legal bases for these Motions is further set forth in detail in the Plaintiffs' Complaint and the following Memorandum in Support of Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction." (ER-37).

Regardless, it is inaccurate for BLM to claim SLPT raised the failure-to-act ripeness argument for the first time on reply. More accurately, BLM raised ripeness for the first time in its response and SLPT replied by fleshing out the failure-to-act argument it made in the Complaint. Parties may not advance an argument made for the first time in a reply, but they can reply to an argument made for the first time in an opposing party's response. That is what SLPT did here.

## VIII. BLM's practice of withholding and misrepresenting information continued into the post-review discovery process.

BLM continued to withhold crucial information from, and to misrepresent crucial information to, NV SHPO after issuing the ROD during the NHPA post-review discovery process. BLM also withheld from and misrepresented crucial information to Tribal consulting parties and the ACHP during the post-review

discovery process. This withheld and misrepresented information includes letters from all the tribes BLM reported it consulted with, when each of those tribes disputed that consultation ever happened. These unconsulted Tribes consistently maintain that they deem all of Thacker Pass to be a Traditional Cultural District and their traditional cultural property, and the supporting documentation the Tribes offered to demonstrate that the 1865 massacre site was much more extensive than BLM originally acknowledged.

Perhaps even more troubling, in the context of "chiefly procedural" laws like NHPA, BLM actively misrepresented information with major procedural implications. For example, BLM told the Tribes that it reached an agreement with NV SHPO and ACHP "in which a Class III survey of the unsurveyed BLM land would be conducted and would be used in determining the eligibility of the Indian village and massacre site." (ER-184). NV SHPO called this "a false statement made by the BLM" and stated that "no such agreement exists with the SHPO." *Id.*

BLM also falsely informed NV SHPO and ACHP that RSIC requested to incorporate the post-review discovery process for the pre-Thacker Pass Lithium Mine permits LNC possesses into the post-review discovery process for the Thacker Pass Project. (ER-217). RSIC made no such request and if it was not for ACHP forwarding BLM's comments to RSIC, the Tribes would have been unaware that BLM misrepresented the Tribes' requests.

BLM failed to recognize Thacker Pass' sacredness to Paiute and Shoshone peoples. And, BLM failed to identify the September 12, 1865 Thacker Pass massacre site despite possessing records of the massacre in its own General Land Office records – the very first documents BLM is supposed to review when analyzing effects to historic properties in a project area – before issuing the ROD. After being informed by a number of tribes – including RSIC (ER-381), BPT (ER-134-135), and SLPT – that Paiute and Shoshone peoples consider Thacker Pass to be a Traditional Cultural District ("TCD") as early as June 3, 2021, BLM refused, and continues to refuse, to delay implementation of the Historic Properties Treatment Plan ("HPTP") – which authorized harmful and intrusive archaeological digs – so that the HPTP could be revised to include Native American concerns.

BLM was presented with records of the 1865 massacre, found in BLM's own General Land Office records, on August 19, 2021. The Tribes asserted that the land they considered culturally and religiously significant because of its association with the 1865 massacre site extended across the Project area and, under NHPA's post-review discovery process, requested that BLM authorize no harm to this land until BLM committed to necessary mitigation measures. Instead, BLM ignored the NHPA's implementing regulations' directive that "the agency official shall acknowledge that Indian tribes…possess special expertise in assessing the eligibility of historic properties that may possess religious and cultural significance

23

to them," 36 C.F.R. § 800.4(c)(1), and persisted in insisting that the massacre did not happen in the Project area so there was no need to delay HPTP implementation or mine construction. BLM also failed to "make reasonable efforts to avoid, minimize or mitigate adverse effects" to the Tribes' traditional cultural properties that were discovered after BLM had completed its initial section 106 efforts. 36 C.F.R. § 800.13(b).

The letters ACHP wrote to BLM while BLM conducted the post-review discovery process demonstrate the arbitrary and capricious nature of BLM's consultation failures. In an October 12, 2021 letter to BLM about Thacker Pass tribal consultation, ACHP wrote, "[T]he SHPO has informed the ACHP that substantive information on tribal consultation is routinely withheld from them, which is problematic considering the SHPO's role in providing concurrence on the eligibility of historic properties which may be of significance to Indian tribes off tribal lands." (2-ER-166). In this letter, ACHP also explained to BLM that all of the information provided by the tribe triggered procedural requirements and "[o]nce the BLM has fulfilled these procedural requirements and committed itself to any necessary resolution measures, it could proceed with implementing the undertaking." (2-ER-165). ACHP repeated this, verbatim, in another letter about Thacker Pass tribal consultation on October 11, 2022. (2-ER-173).

BLM's actions appear even more arbitrary when BLM's point made in its answering brief – that surface disturbing activities approved by the ROD could not begin until the BLM Nevada State Office issued a decision accepting LNC's reclamation financial guarantee – is considered. BLM Answering Brief, p. 10. It only took a matter of hours on February 22, 2023 for LNC to submit the surety bond application and BLM to approve it. So, BLM had between June 3, 2021 to February 22, 2023 to revise the HPTP and commit itself to necessary mitigation measures without delaying mine construction. Still, BLM refused to.

BLM did not just violate NHPA's post-review discovery provisions for the Thacker Pass Project, BLM violated NHPA's post-review discovery provisions for the Kings Valley Clay Mine, Kings Valley Lithium Exploration, Quinn River Valley Test Wells, and Far East projects, too. It is still undisputed that BLM never even initiated the post-review discovery process for any of these older permits. For all of LNC's active permits in Thacker Pass, the information presented by the Tribes to BLM meant that BLM discovered previously unidentified properties eligible for inclusion in the National Register and then approved multiple modifications to the older permits without ever conducting a post-review discovery process for these permits.

Dated: August 18, 2023

Respectfully submitted,

/s/ *Will Falk*
Will Falk
2980 Russet Sky Trail
Castle Rock, CO 80108
(319) 830-6086
falkwilt@gmail.com

*Attorney for Reno-Sparks Indian Colony and Summit Lake Paiute Tribe*

*/s/Rick Eichstaedt*
Rick Eichstaedt
EICHSTAEDT LAW OFFICE, PLLC
421 W. Riverside Avenue, Suite 1004
Spokane, WA 99201-0410
(509) 251-1424
rick@rbmindianlaw.com

*Attorney for Burns Paiute Tribe*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B)(i) in that, according to the word-count feature of the word processing system in which the brief was prepared, the brief contains 5798 words, excluding the portions exempted by Rule 32(f). The brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman font.

Dated: August 18, 2023

*/s/ Will Falk*
Will Falk

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of August 2023, a copy of the

foregoing APPELLANTS' REPLY BRIEF was served via the ECF filing system

which will send notification of such filing to all parties of record.

*/s/Will Falk*
Will Falk

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 18. Certificate for Paper Copy of Electronic Brief

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form18instructions.pdf*

**9th Cir. Case Number(s)**

My name is

I certify that this brief is identical to the version submitted electronically on *(date)*:

.

**Signature**          **Date**

*(either manual signature or "s/[typed name]" is acceptable)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 18**                                                                 *Rev. 12/01/2018*